## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LEE C. FEIL, et al.

        Plaintiffs,

v.

                                                  **Case No. 05-2459-JWL**

MBNA AMERICA BANK, N.A.
and WOLPOFF & ABRAMSON, LLP,

        Defendants.


## MEMORANDUM AND ORDER

Plaintiffs Lee C. Feil, Dawn Rottinghaus, John Donaldson, and Michelle Donaldson filed suit in state court against MBNA America Bank, N.A. ("MBNA"), which issued credit cards to the plaintiffs, and Wolpoff & Abramson ("W & A"), a firm hired by MBNA to recover money owed on the plaintiffs' overdue credit card accounts. The plaintiffs' state court action alleged various consumer protection violations and other torts under Kansas law. Alleging diversity jurisdiction, the defendants removed the suit to this federal court (doc. 1).

These state law claims may not proceed in this court, however, because each credit card agreement between MBNA and each of the plaintiffs includes a broad arbitration clause that requires the parties involved to submit to arbitration all claims arising out of the agreement. The arbitration clause within in each credit card agreement includes W & A within its scope because W & A acted as a collection agent for MBNA.

1

This matter comes before the court on several pretrial motions filed by the parties:   (1) the plaintiffs have moved to amend their complaint; (2) the plaintiffs have moved to remand this matter to state court; (3) the plaintiffs have moved for an award of attorney's fees incurred in obtaining remand of this matter to state court; and (4) the defendants have moved to compel arbitration and to dismiss or stay the court proceedings.

For the reasons explained below, the plaintiffs' motion to amend the complaint (doc. 11) is granted, the plaintiffs' motion to remand (doc. 16) is denied, the plaintiffs' motion for attorney's fees (doc. 19) is denied, and the defendants' motion to compel arbitration and stay the proceedings (doc. 5) is granted.

## ANALYSIS

### 1.    Motion Seeking Leave to Amend the Complaint

The plaintiffs filed a motion seeking leave to amend the complaint on November 16. Although the court allowed time for them to do so, the defendants did not file a response.  The motion to amend is therefore granted.

### 2.    Motions for Removal, Remand, and Attorney's Fees

The court now will address the three related motions all pertaining to whether the court has diversity subject matter jurisdiction over this matter.

### A.    Standards for Removal and Remand

A party may remove a case to federal district court if the federal court could have exercised original jurisdiction over the matter.   28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).   The court must remand a case back to state court,

2

however, "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c).  Because federal courts are courts of  limited jurisdiction, there is a presumption against exercising removal jurisdiction.  *Laughlin v. K-Mart Corp*., 50 F.3d 871, 873 (10th Cir. 1995).  In line with this, "[f]ederal removal jurisdiction is statutory in nature and is to be strictly construed."  *Archuleta v. Lacuesta*, 131 F.3d 1359, 1370 (10th Cir. 1997).  The party invoking the court's removal jurisdiction has the burden to establish the court's jurisdiction.  *Laughlin*, 50 F.3d at 873.  Any doubts must be resolved in favor of remand.  *Archuleta*, 131 F.3d at 1359; *Laughlin*, 50 F.3d at 873.

**B.    Application**

Because the plaintiffs' claims allege only violations of state law and no federal question is at issue, removal here must be based upon diversity jurisdiction.  28 U.S.C. § 1332(a).  Pursuant to 28 U.S.C. § 1332, this court "shall have original jurisdiction . . . where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. . . . "  *Id*.  In addition, "complete diversity" is required such that "diversity jurisdiction attaches only when all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation."  *Depex Reina 9 Partnership v. Texas Intern. Petroleum Corp*., 897 F.2d 461, 463 (10th Cir. 1990).

In applying § 1332 to this case, the four plaintiffs are all Kansas citizens, defendant MBNA is deemed a Delaware citizen, and defendant W & A is deemed a Maryland citizen.  The citizenship of the parties is undisputed; indeed, the only issue regarding this court's diversity jurisdiction is the amount in controversy.

3

Although the plaintiffs allege that their amended complaint places the amount in controversy below the $75,000 threshold needed to reach the limit for federal diversity, the court disagrees. Both the face of the original complaint[1] and the amended complaint allege that both defendants committed numerous independent violations against each plaintiff under the Kansas Consumer Protection Act ("KCPA"), K.S.A. 50-623, et seq. Notably, a plaintiff may recover for each independent violation of the KCPA. *See Dodson v. U-Needa Self Storage*, LLC, 32 Kan. App. 2d 1213, 1220 (2004). Thus, even under the most conservative interpretation of the damages alleged on the face of the plaintiffs' amended complaint, each plaintiff alleges at least twelve violations against MBNA and at least fifteen violations against W & A under the KCPA. Further, the plaintiffs allege at a minimum that they are entitled to $10,000 for each independent violation. Each plaintiff, therefore, has alleged against both defendants damages in excess of the $75,000 threshold needed for diversity jurisdiction.

In attacking the defendants' notice of removal to this court, the plaintiffs misconstrue the damages alleged on the face of their amended complaint. The defendants' removal did not

---

[1] Ordinarily, the court decides a motion for removal based on the original complaint. A plaintiff may not "force remand of an action after its removal from state court by amending the complaint to destroy the federal court's jurisdiction over the action. Instead, the propriety of removal is judged on the complaint as it stands at the time of the removal." *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488-89 (10th Cir. 1991) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938)). Nevertheless, where, as here, the plaintiff amends the complaint before the defendant files an answer, the removal motion is adjudicated using the plaintiff's amended complaint. *See American Bush v. City of South Salt Lake*, 42 *Fed. Appx.* 308, 310 (10th Cir. 2002) (explaining that "the removal petition did not serve to cut off plaintiffs' right to amend their complaint once as a matter of course").

require them to aggregate all of the plaintiffs' claims to exceed the necessary $75,000 amount in controversy.   Instead, the defendants could merely aggregate the violations alleged by each plaintiff against each defendant.   This more restricted form of aggregation is acceptable.  *See, e.g., Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1292 (10th Cir. 2001) (removal is proper in the limited instance where a single plaintiff aggregates all its claims against a single defendant).[2]  *See also Deajess Medical Imaging v. Allstate Ins. Co.*, 344 F. Supp. 2d 907 (S.D.N.Y. 2004) (observing the general rule that "a single plaintiff may aggregate its claims against a single defendant in order to meet the amount in controversy requirement") (citing *Snyder v. Harris*, 394 U.S. 332, 335 (1969)).

Thus, even without including the plaintiffs' additional alleged damages in the form of injunctive relief and attorney's fees, the court finds that each plaintiff has alleged far more than $75,000 in damages against each defendant.   Ultimately, then, the defendants have established that this court possesses diversity jurisdiction, and removal was therefore proper.

Further, because the court finds that removal was proper and denies the motion to remand, the plaintiffs' motion for attorney's fees is denied because it was predicated entirely on having to respond to an improper removal by filing a motion to remand.   Because the defendants properly removed the suit to federal court, the motion for attorney's fees is

---

[2] To the extent that the plaintiffs seek through their amended complaint to allege a state class action that defeats federal diversity jurisdiction, this effort fails because the United States Supreme Court abrogated the line of Supreme Court and Tenth Circuit cases upon which the plaintiffs rely.  *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, 125 S. Ct. 2611, 2615-28 (2005).

unavailing.

**3.      Motion to Compel Arbitration and Stay the Court Proceedings**

The final issue before the court concerns the defendants' unopposed motion to compel arbitration.   The court addresses the motion as unopposed because the plaintiffs failed to file a timely response.  Although by no means required to do so, the court on December 15, 2005, generously allowed the plaintiffs an additional opportunity to "show cause" why they failed to file a response to the motion to compel arbitration.  Rather than explaining why they failed to respond within the appropriate deadline, the plaintiffs instead submitted a response with substantive arguments regarding the legal merits required to stay the proceedings and compel arbitration.  That obviously was not the issue raised by the court's "show cause" order.  On the contrary, the court's order required the plaintiffs to provide the factual reason, if any, "why they failed to respond to defendants' motion in a timely fashion."  Nowhere in their response do the plaintiffs attempt to explain to the court why they failed to file a timely response to the defendants' motion.  Thus, they failed to show cause.  *See Pioneer Investment Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380 (1993) (analyzing excusable neglect standard); *White v. O'Dell Indus., Inc.*, 2000 WL 127267, at *1-2 (D. Kan. 2000) (applying *Pioneer* factors to Local Rule 7.4).  As a result, the court will address the defendants' motion as uncontested under Local Rule 7.4.  *See Evans v. Caldera*, 1999 WL 233307, at *2-3 (D. Kan. 1999) ( rejecting reasons offered by plaintiff for his untimely response to motion to dismiss and granting defendant's motion as uncontested under Local Rule 7.4).

Even if the court were to address the plaintiffs' purported response, however, the court

6

would nevertheless grant the motion to compel arbitration.   The arbitration clauses included in the credit card agreements between each of the plaintiffs and MBNA are extremely broad. They provide in part:

> Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief), including Claims regarding the applicability of this Arbitration Section or the validity of the entire Agreement or any prior Agreement, shall be resolved by binding arbitration.

The credit card agreements further provide that the arbitration clauses encompass a "third party providing . . . services . . . in connection with the account (including . . . debt collectors . . . ) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us."   Thus, because the plaintiffs joined W & A in their action against MBNA, even the plaintiffs' state law claims against W & A must be submitted to arbitration.

Merely weeks ago, the United States Supreme Court reaffirmed the long-established rule that when an arbitration clause provides that an arbitrator shall determine the scope of the clause, that agreement is enforceable and the issue of "arbitrability" is reserved for the arbitrator. *See Buckeye Check Cashing, Inc. v. Cardegna*, --- U.S. ---, 2006 WL 386362, *1-6 (Feb. 21, 2006)).   The Court's recent guidance is particularly applicable here, as the arbitration clauses of the credit card agreements provide in part that issues "regarding the applicability of this arbitration section or the validity of the entire agreement or any prior agreement shall be resolved by binding arbitration."   Accordingly, and in line with the Court's recent decision in *Cardegna*, the parties here agreed to arbitrate all issues, including the issue

7

of whether the arbitration clause applies to the plaintiffs' state law claims.  *Id.*

In *Cardegna*, the Court first outlined the general federal policy in favor of arbitration. The Court explained: "To overcome judicial resistance to arbitration, Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16.  Section 2 embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts:

> A written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*Id.* (quoting 9 U.S.C. § 2).

In *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330 (10th Cir. 1993), the Circuit analyzed an arbitration clause with language virtually identical to the language of the arbitration clauses at issue here.  The Circuit noted in that case: "In reviewing this language we are guided by the principal [sic] that arbitration agreements are favored and are to be broadly construed with doubts being resolved in favor of coverage.  In this light the arbitration agreement is clearly broad enough to cover the dispute at issue . . . ."  *Id.* at 332 (internal citations omitted).  Later, in *Brown v. Coleman Co., Inc.*, 220 F.3d 1180 (10th Cir. 2000), the Circuit analyzed that same arbitration clause language and further elaborated: "When a contract contains a broad arbitration clause, matters that touch the underlying contract should be arbitrated.  The arbitration clause before us today is the very definition of a broad arbitration clause as it covers not only those issues arising under the employment contract, but even those issues with any connection to the contract."  *Id.* at 1184.                    The language of the

arbitration clauses of the credit card agreements at issue here are broadly inclusive. *See Cummings v. FedEx Ground Package System, Inc.*, 404 F.3d 1258, 1262 (10th Cir. 2005) (describing a "broad provision" as one that "refers all disputes arising out of a contract to arbitration"); *accord Spahr v. Secco*, 330 F.3d 1266, 1270 (10th Cir. 2003) (describing broad provisions as those requiring arbitration of "all disputes arising out of or relating to the overall contract"). It is legally significant that the clause is defined as "broad" because as explained in *Cummings*, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." 404 F.3d at 1261. When a presumption of arbitrability exists, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," and any doubts "should be resolved in favor of coverage." *Local 5-857 Paper, Allied-Industrial, Chemical and Energy Workers Int'l Union v. Conoco Inc.*, 320 F.3d 1123, 1126 (10th Cir. 2003) (quoting *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986)). In fact, "in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* (quoting *AT & T Techs.*, 475 U.S. at 650). In sum, the "broad" arbitration clauses in this case force the parties to submit all their claims to binding arbitration.

Finally, the court agrees with the defendants' observation that the exact arbitration clauses in the credit card agreements at issue here recently were upheld as enforceable in a fact

pattern indistinguishable from the facts of this case.  *See Hoefs v. CACV of Colorado, LLC*, 365 F. Supp. 2d 69, 75 (D. Mass. 2005) ( "As described, these two provisions–standing alone–subject Plaintiff's claims against all three defendants to mandatory arbitration.").  In *Hoefs*, the plaintiff sued an assignee of MBNA and alleged highly analogous consumer protection claims as the plaintiffs raise in this case.  Just as the defendants contend in this case, the defendants in *Hoefs* successfully argued that a broad arbitration clause required the court to submit the plaintiff's claims, which arose out of their credit card agreement, to binding arbitration.  *See id.* at 74.  Given the identical arbitration clause in this case, the *Hoefs* decision bolsters this court's conclusion that the parties agreed to binding arbitration.

### Conclusion

Because the court upholds the notice of removal and denies the motion to remand, the court has diversity subject matter jurisdiction over this matter.  Further, because the court finds that the parties agreed to submit all their claims to binding arbitration, the court grants the motion to compel arbitration.  The entirety of this action is hereby referred to arbitration, and the court proceedings are stayed.

**IT IS THEREFORE ORDERED BY THE COURT** that the plaintiffs' motion to amend the complaint (doc. 11) is granted, the plaintiffs' motion to remand (doc. 16) is denied, the plaintiffs' motion for attorney's fees (doc. 19) is denied, and the defendants' motion to compel arbitration and stay the court proceedings (doc. 5) is granted.  The parties are directed to proceed to arbitration on all of the plaintiffs' claims.  The court will stay the judicial

proceedings in this case pending completion of the arbitration process. Counsel for the parties are directed to report to the court in writing no later than September 5, 2006, concerning the status of that arbitration in the event that it has not been terminated earlier. Failure to so report will lead to dismissal of this case for lack of prosecution.

**IT IS SO ORDERED** this 3rd day of March, 2006.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

11